UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

CIVIL ACTION NO. 0:14-cv-00082-EBA

PAMELA KAYE SORRELL                                               PLAINTIFF

V.                        **MEMORANDUM OPINION**
                             **AND ORDER**

CAROLYN W. COLVIN,
Commissioner of Social Security Administration,                     DEFENDANT.

## I. INTRODUCTION

Plaintiff, Pamela Kaye Sorrell, brings this action under 42 U.S.C. § 405(g) to challenge the Defendant Commissioner's final decision denying her application for Disability Insurance Benefits. [R. 2]. Upon consent of the parties, this matter has been referred to the undersigned to conduct all proceedings and order the entry of final judgment in accordance with 28 U.S.C. § 636© and Fed.R.Civ.P. 73. [R. 13]. Now ripe for decision on the parties' cross-motions for summary judgment, and for the reasons set forth herein, the Plaintiff's Motion for Summary Judgment [R. 14] shall be denied, the Defendant's Motion for Summary Judgment [R. 15] shall be granted, and Judgment will be entered affirming the Commissioner's final decision.

## II. FACTUAL BACKGROUND & PROCEDURAL HISTORY

The Plaintiff filed an application on July 27, 2011 for a period of disability and disability and disability insurance benefits beginning July 2, 2011. Tr. 108-11. The application was denied initially and on reconsideration. Tr. 43-61. Plaintiff was heard before the Administrative Law Judge ("ALJ") [Tr. 21-42], following which her claim was denied [Tr. 8-20], and the Appeals Council denied review of the decision [Tr. 1-8]. Accordingly, the case is ripe for review.

At the time she claimed to become disabled, Plaintiff was fifty-eight years old. Tr. 108. She has a high-school education and past relevant work as a community action case aide and a grocery bagger. Tr. 31, 148. She said she quit work in July 2011 because she could not perform the

physical demands of the job. Tr. 31-32.  She listed her disabling impairments as: "carpal tunnel, fibromyalgia, osteoarthritis, vision, and plantar fasciitis."  Tr. 138.

The record shows that Plaintiff saw various doctors, including her primary care provider James Frederick, M.D., off and on since 1997 for plantar faciitis on her right foot, possible stress fracture on her left toe, fibromyalgia, sinusitis, carpal tunnel syndrome, osteoarthritis, and degenerative disc disease.  R. 14-1 at 3-4; Tr. 195-201, 203-05, 236-62, 268-71.  On July 12, 2011, soon after her alleged disability date, Plaintiff saw Howard Feinberg, D. O., for neurological consultation regarding her problems with sleeping, muscle pain, and hand pain, including morning stiffness and numbness. Tr. 202.  He noted trigger point tenderness consistent with fibromyalgia; no pain with cervical and lumbar range of motion; no vertebral point tenderness; mild wrist tenderness; and an equivocal Tinel sign bilaterally. Tr. 202.  Dr. Feinberg's diagnoses included osteoarthritis, degenerative disc disease, fibromyalgia, carpal tunnel syndrome, and low normal bone density. Tr. 202.  He prescribed Motrin in place of Aleve, Flexeril in place of Elavil, continuation of wrist splints, and a bilateral upper extremity nerve study. Tr. 202.  The nerve conduction study showed some abnormal median sensor and motor nerves, but also showed some normal nerves. Tr. 206-15.

Plaintiff had no further treatment until April 2012 when she saw Dr. Frederick for a headache.   Dr. Frederick referred her to a neurologist.  Tr. 227-28.

In September 2011, Plaintiff saw Thien Ngo, M.D., for a consultative examination relating to her disability application. Tr. 220-223.  Dr. Ngo's examination revealed no muscle asymmetry, atrophy, or involuntary movements; no structural deformity, effusion, or tenderness or swelling of any joint except diffuse tender points on the front and back of the chest and some tender points in her feet with full range of motion; limited range of motion of her cervical spine; positive Phalen's and Tinel's signs in both hands; a normal gait and ability to rise from sitting without assistance, stand on her tiptoes and heels, tandem walk without problems, and bend and squat without

difficulty; full (5/5) grip strength with her hands with adequate fine motor movements, dexterity and ability to grasp objects bilaterally; 20/30 visual acuity in both eyes with correction; good tone and strength in all muscle groups; and normal reflexes. Tr. 221-22. His diagnosis included neck pain due to degenerative disc disease versus cervical radiculopathy; bilateral hand numbness likely due to carpal tunnel syndrome; bilateral foot pain likely due to plantar faciitis; and a history of fibromyalgia with fatigue and multiple tender points. Tr. 222. Based on the examination and objective evidence, Dr. Ngo opined that Plaintiff should be able to sit, walk, and stand for a full workday with frequent and adequate breaks and to lift/carry objects with limitations secondary to pain. Tr. 222

State agency physician Marvin Bittinger, M.D., reviewed Plaintiff's medical records in November 2011 and concluded she could perform a range of medium work, including her past relevant work. Tr. 46-51. Dr. Bittinger opined that she could lift and carry fifty pounds occasionally, twenty-five pounds frequently; sit and stand/walk six hours in an eight-hour work day; frequently perform all postural activities but only occasionally climb ladders, ropes and scaffolds; and there were no manipulative, visual, communicative or environmental limitations. Tr. 48-50.

On December 7, 2011, state agency physician Diosdado Irlandez, M.D., also reviewed Plaintiff's medical records. Tr. 57-59. He opined that Plaintiff could occasionally lift/carry fifty pounds, frequently lift/carry twenty-five pounds; could stand/walk/sit six hours in an eight-hour work day; pushing/pulling was unlimited other than for lift/carry; frequently climb ramps/stairs, balance, stoop, kneel, crouch and crawl and occasionally climb ladders/ropes/scaffolds. Tr. 58-59. There are no manipulative, visual, communicative or environmental limitations. Tr. 59-60. Dr. Irlandez concluded that Plaintiff "has some limitations in the performance of certain work activities; however, these limitations would not prevent the individual from performing past relevant work as a/an cashier." Tr. 60.

In November 2012, Plaintiff returned to Dr. Frederick "to have disability form filled out." Tr. 276. She complained of joint pain, but Dr. Frederick found "no motor weakness, no motor sensory deficit ... and no clubbing, cyanosis, edema" in extremities. Tr. 276-77. His assessment was "pain in joints, multiple sites." Tr. 276. Nonetheless, his medical statement said that Plaintiff can work only one hour per day with breaks; can stand/walk and sit less than two hours in an eight hour day; cannot frequently or occasionally lift any weight; never balance or climb ladders and only occasionally bend, stoop or climb stairs. Tr. 272.

Plaintiff testified at her January 23, 2013 hearing that she is 5' 5" and weighs 207 pounds; in July 2011, she weighed around 180 pounds. Tr. 29. She testified that she cannot stand on her feet for more than a half hour; she has to use both hands to lift a book; she has pain across the back of her shoulders and cannot lift anything; her arms are in constant pain and would not let her rest most of the night after she worked; after waking up, it takes her about an hour to function and she has to walk very carefully on her feet; she does house cleaning in ten to fifteen minute blocks and then rests; she cannot sit or stand without pain; her hands and arms are too sore to hold a book while reading; she has severe pain three or four times a month. Tr. 29-36, 40. On a scale of one to ten, she rates her pain constantly at a seven and the severe pain at a ten. Tr. 37. She claimed that she has to use both hands to pick up things because her grip will not hold and she drops things. Tr. 38.

The ALJ found that Plaintiff's carpal tunnel syndrome and visual disturbance were "severe" impairments. Tr. 13. Based on the entire record, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform medium work, with the limitations that she can stand, walk or sit for six hours in an eight hour day; she can frequently climb ramps/stairs, balance, stoop, kneel, crouch or crawl; occasionally, she can climb ladders, ropes or scaffolds.

Plaintiff argues four issues on appeal. She claims first that the ALJ did not give her treating physician controlling weight and did not give adequate reasons for discounting the treating

4

physician's report. Second, she contends the ALJ erred in relying on non-examining physicians who did not have the opportunity to review the complete file and whose diagnoses and restrictions are internally inconsistent. [R. 14-1 at 1]. Third, she argues the ALJ erred by not considering her physical impairments of arthritis, fibromyalgia and plantar fasciitis as "severe" and by not considering the effect of all severe and non-severe impairments. Fourth, Plaintiff contends the ALJ failed to include resulting limitations of her carpal tunnel and visual disturbance in the RFC. [R. 14-1 at 1-2].

### III.  STANDARD OF REVIEW

A review of the Commissioner's decision is limited to a determination of whether the findings are supported by substantial evidence and whether the correct legal standards are applied. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 390, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*, quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "If substantial evidence supports the Commissioner's decision, this Court will defer to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

A reviewing court is not authorized to "try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012), quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if the court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Tyra v. Secretary of Health & Human Services*, 896 F.2d 1024, 1028 (6th Cir. 1990). The evidence in the record must be taken as a whole, and the court must take into account whatever in the record fairly detracts from its weight. *Id.*

5

## IV.  ARGUMENT

A.  <u>The ALJ Completed the Sequential Evaluation Process After Determining Plaintiff Had Some Severe Impairments</u>.

Plaintiff complains that the ALJ erred by failing to consider her arthritis, fibromyalgia, and plantar fasciitis as "severe" impairments and by not considering the effect of all of her severe and non-severe impairments. R. 14-1 at 1-2, 8-11. Step two of the sequential evaluation process involves determination of whether an impairment or combination of impairments is "severe." If severe, the impairment significantly limits the ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521(a). If there is no severe impairment, the claimant is not disabled. If there is a severe impairment, the analysis continues to take both severe and non-severe impairments into account when later determining the claimant's residual functional capacity. 20 C.F.R.§ 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' ... when we assess your residual functional capacity.").

In this case, the ALJ did not stop his analysis at step two. Instead, he continued to take all of her impairments, severe and non-severe, into account when he assessed her residual functional capacity. The ALJ noted Plaintiff's report to Dr. Ngo of "a history of fibromyalgia, carpal tunnel syndrome, and plantar fasciitis and neck pain." R. 8-1 at 14. Plaintiff admits in her brief that the ALJ discussed "that Ms. Sorrell suffers from fibromyalgia, plantar fasciitis, and pain in her shoulders, hips and legs...." R. 14-1 at 9. The ALJ also noted that Dr. Ngo "diagnosed neck pain likely from degenerative disc disease; bilateral hand pain, likely due to carpal tunnel syndrome; bilateral foot pain due to plantar fasciitis and history of fibromyalgia with tender points." R. 8-1 at 14-15. Nonetheless, despite these diagnoses, Dr. Ngo opined that "the claimant should be able to sit, walk, and stand for a full workday with frequent and adequate breaks; [and] lift/carry objects with limitations, secondary to pain...." Tr. 220-223. The ALJ's RFC analysis limited Plaintiff to medium work, "except she can

6

stand, walk or sit for six hours in an eight hour day; she can frequently climb ramps/stairs, balance, stoop, kneel, crouch or crawl; occasionally climb ladders, ropes or scaffolds." Tr. 13.

Plaintiff has not identified any medically supported limitations that the ALJ should have included in his residual functional capacity ("RFC") assessment, but did not. The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms "are not entirely credible" in light of the objective medical evidence of record. Tr. 15. He further found "there is no objective medical evidence of record to reduce the claimant's residual functional capacity based on Dr. Frederick's statement or the claimant's testimony at the hearing." *Id.* Finding some of her impairments were not severe is of no consequence when the ALJ continued the analysis and considered the non-severe impairments in his RFC analysis.

A similar argument was made in *Sharp v. Sullivan*, 907 F.2d 151 (Table), 1990 WL 93397 at *4-5 (6th Cir. 1990), where the claimant argued the determination at step two that her impairments were not severe was not supported by substantial evidence. The Court found the argument was without merit when the ALJ went on to steps four and five and made a determination of RFC.

Accordingly, Plaintiff's claim that the ALJ erred by not finding all of her impairments severe is without merit. The ALJ's findings are supported by substantial evidence and the proper legal standard was used. Plaintiff's argument that the ALJ did not give sufficient weight to Dr. Frederick's opinion is addressed separately below.

    B.    <u>The ALJ Properly Weighed the Medical Opinions of Record in Determining RFC</u>

Plaintiff argues that the ALJ did not give her treating physician controlling weight and failed to give adequate reasons for discounting his report. R. 14-1 at 5-8. She also claims that the ALJ improperly relied on non-examining physicians who did not review the complete file. *Id.* at 1. Lastly, she contends that the RFC should have included more limitations to accommodate her carpal tunnel syndrome and claimed visual impairment. *Id.* at 11.

The determination of RFC is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 404.1545. "An ALJ considers numerous factors in constructing a claimant's RFC, including the medical evidence, non-medical evidence, and the claimant's credibility." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. Appx 435, 443 (6th Cir. 2010). "[A]n ALJ must give a treating physician's opinion controlling weight only if the opinion relies on objective medical findings [citation omitted] and substantial evidence does not contradict it." *Id.* at 441. The consistency of the treating physician's opinion must be with the record as a whole. The ALJ may consider the claimant's credibility, whether the findings are supported by objective medical evidence, and the opinions of every other physician of record. *Id.*

First, Plaintiff has not challenged directly the ALJ's finding that her statements of disabling limitations were not credible. Accordingly, that challenge is waived. *United States v. Elder*, 90 F. 3d 1118 (6th Cir. 1996) (Issues unaccompanied by some effort at developed argumentation are deemed waived.).

Subsequent to her alleged onset date, Plaintiff saw a physician for treatment only two times. In July 2011, soon after her claimed onset date, she saw Dr. Feinberg for problems with sleeping, muscle pain and hand pain. Tr. 202. He prescribed Motrin for pain and a muscle relaxer (Flexeril) in place of an antidepressant (Elavil). *Id.* A nerve conduction study shows some abnormal nerves, but also showed normal ones. Tr. 206-15. In April 2012, Plaintiff saw Dr. Frederick for a headache with pressure at the top of her head; she was referred to a neurologist. Tr. 227-28. There is no indication of any follow up to that appointment. On November 30, 2012, Plaintiff saw Dr. Frederick "to have disability form filled out." Tr. 276-277. While she reported that "she has a lot of joint and muscle pain," Dr. Frederick noted in her system review: "Vision loss no; ... Joint pain no; Joint stiffness no; Joint swelling no; Morning stiffness no." Tr. 276. Nonetheless, Dr. Frederick said she could only stand, walk or sit for less than two hours in an eight hour day, work less than one hour in an eight hour work day, be absent more than four days a week and never light any weight. Tr. 272. Dr. Frederick's

8

severe limitations on Plaintiff's ability to work are not supported by any objective evidence in the record and are inconsistent with his own records on that date. Tr. 276-77.

The ALJ specifically found that Dr. Frederick's "clinical findings are essentially normal and there is no objective evidence of record to reduce the claimant's residual functional capacity based on Dr. Frederick's statement or the claimant's testimony at the hearing. There being no credible evidence to the contrary, the undersigned has given the opinion of the state agency reviewers great weight." Tr. 15. Where there are conflicts in the evidence, the ALJ is required to resolve the conflicts and incorporate only those limitations that are credible in the RFC. *Casey v. Sec'y of Health & Human Servs.* 987 F.2d 1230, 1234-35 (6th Cir. 1993). Under the circumstances, the ALJ's findings of credibility are entitled to great deference. *Anthony v. Astrue,* 266 F. App'x 451, 460 (6th Cir. 2008).

Supporting the ALJ's findings regarding credibility is Plaintiff's consultative examination with Dr. Ngo, who opined that she could sit, walk, and stand for a full workday with adequate breaks and could lift/carry objects with limitations secondary to pain. Tr. 222. Of note, he found that her grip strength was full (5/5) and that her vision was 20/30 in both eyes with correction. Tr. 221-222. Dr. Bittinger, a state agency physician, concluded Plaintiff could perform a range of medium work, including her past relevant work. Tr. 46-51. Another state agency physician, Dr. Irlandez, opined that Plaintiff had some limitations in performing certain work activities, but they would not prevent her from performing past relevant work. Tr. 60. The ALJ found there was "no credible evidence to the contrary" of these opinions and, accordingly, gave them "great weight." Tr. 15. *See Price v. Comm'r of Soc. Sec.,* 342 F. App'x 172, 175-76 (6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion.").

Regarding the record reviewed by the non-examining physicians, Plaintiff admits the only thing missing was Dr. Frederick's RFC. R 14-1 at 8. She contends they should have given reasons for disagreeing with it. The determination of RFC, however, is reserved to the Commissioner. 20 C.F.R.

§§ 404.1527(d)(2), 404.1545. The ALJ's rejection of Dr. Frederick's RFC is based on substantial evidence and should be upheld.

While three doctors found few work limitations, the ALJ gave Plaintiff the benefit of the doubt by limiting stand, walk or sit to six hours in an eight-hour day and only occasionally climbing ladders, ropes or scaffolds. Tr. 13. There is substantial evidence in the record as a whole to support the ALJ's determination that Sorrell was capable of performing past relevant work. Accordingly, the Commissioner's decision should be affirmed.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED that Plaintiff's Motion for Summary Judgment [R. 14] be DENIED, the Defendant Commissioner's Motion for Summary Judgment [R. 15] be GRANTED, and that Judgment be entered affirming the final decision of the Commissioner.

Signed June 25, 2015.

Signed By:
*Edward B. Atkins* *EBA*
**United States Magistrate Judge**